UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LOUIS SEAN BODWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV01440 AGF |
| | ) | |
| JENNIFER RICO, UNKNOWN CUNDELININ, ALAN STAHL, SCOTT MEYERS, THOMAS LUPO, and ROBERT LOYND, M.D., | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of Defendant Robert Loynd, M.D., the only remaining Defendant in the case, for summary judgment on Plaintiff Louis Sean Bodway's claims against him brought pursuant to 42 U.S.C. § 1983. Plaintiff claims that Dr. Loynd violated Plaintiff's constitutional rights by his deliberate indifference to Plaintiff's serious medical needs while Plaintiff was incarcerated at St. Charles County Department of Corrections ("SCCDC") as a pre-trial detainee. Dr. Loynd provided physician services to inmates at SCCDC during all relevant time periods as an independent contractor. For the reasons set forth below, Dr. Loynd's motion for summary judgment shall be granted and final judgment shall be entered in the case.

## BACKGROUND

On June 30, 2007, prior to his arrest, Plaintiff underwent an MRI of his lumbar spine and was diagnosed with a left paracentral herniated disc compressing the thecal sac and the left nerve root at L4-5. In 2008, Plaintiff was prescribed various narcotic

medications for back pain.  From August 12 to14, 2008, Plaintiff was hospitalized after he attempted suicide by ingesting approximately 65 Xanax pills.  On August 14, 2008, Plaintiff was arrested at the hospital and was brought to SCCDC for booking on a failure-to-appear charge.  Prison officials determined that he should be segregated for suicide watch and narcotic withdrawal.  This segregation took the form of Plaintiff being chained to a bench in the booking area until he was released on August 19, 2008.

Plaintiff's first contact with Dr. Loynd was on August 18, 2008, when he saw Dr. Loynd in Dr. Loynd's office at SCCDC.  Until that point, Dr. Loynd had no knowledge that Plaintiff had been segregated.  During the August 18, 2008 visit, Dr. Loynd examined Plaintiff and took a medical history.  Plaintiff told him that he sustained a low back injury 15 months prior, but had refused surgery.  According to Plaintiff, he also told Dr. Loynd what medications he had been prescribed for back pain prior to his confinement.  Dr. Loynd noted that Plaintiff was on withdrawal protocol for opiates and benzodiazepines.  On examination, Dr. Loynd noted that Plaintiff walked with a limp, "can't or _won't_ walk on heels," could walk on toes somewhat, had no paraspinal muscle spasm, and had normal deep tendon reflexes bilaterally.  Dr. Loynd told Plaintiff that a 15-month old MRI report was not a good indication of current problems.  He assessed that Plaintiff abused benzodiazepines and opiates, had a recent suicide attempt, and had questionable low back pain.  He did not prescribe Plaintiff's former medications, but rather prescribed 400 mg. Motrin twice daily for 30 days.

From November 5, 2008, to November 17, 2009, Plaintiff was again detained at SCCDC as a pre-trial detainee.  During this time, Plaintiff saw Dr. Loynd three times -- on

November 21 and November 24, 2008, and on June 10, 2009. During the November 21, 2008 visit, Plaintiff told Dr. Loynd that he had chronic low back pain, "bad discs," and pain down his right leg. On examination, Dr. Loynd noted that Plaintiff had no paraspinal muscle spasm, normal deep tendon reflexes bilaterally, and good motor strength, and that Plaintiff was requesting Tylenol. Dr. Loynd noted that Plaintiff's exam was unchanged from August 2008, and he prescribed Extra Strength Tylenol for 30 days.

On November 24, 2008, Plaintiff told Dr. Loynd that he wanted narcotics for pain and that he did not understand why he could not get them. On examination, Dr. Loynd noted that Plaintiff's exam and clinical appearance were "much better" than in August 2008. Dr. Loynd advised Plaintiff that rest, heat, and massage would improve his symptoms, and told him to continue with the Extra Strength Tylenol and that he would not be getting narcotic medication. On June 10, 2009, Plaintiff came to the SCCDC medical clinic and demanded narcotic pain medication, but refused an examination. Dr. Loynd told him that he would not be given narcotic pain medication without an examination. Dr. Loynd noted that Plaintiff was walking normally.

Dr. Loynd has submitted an affidavit attesting that on each occasion that he saw Plaintiff, he (Dr. Loynd) provided care and treatment consistent with the standard of care applicable to similar professionals in the field of medicine. He also has submitted the expert report, deposition testimony, and affidavit of medical expert Dean Rieger, M.D., who attests that he reviewed the medical records and deposition testimony in this case and that the "care and treatment provided to Plaintiff by Defendant Loynd was reasonable and

3

appropriate given Plaintiff's subjective complaints and objective symptoms." (Doc. No. 71-11.)

Count I of Plaintiff's amended complaint claims that keeping him chained to the bench during his four-day incarceration at SCCDC in August 2008 violated his due process rights and his constitutional right to be free from cruel and unusual punishment. He alleges that as a result, he endured mental and physical suffering and permanent damage, for which he seeks compensatory and punitive damages against the SCCDC officials allegedly responsible for the decision to keep him chained to the bench, as well as against Dr. Loynd.

In Count II of the amended complaint, which is against Dr. Loynd only, Plaintiff claims that Dr. Loynd was deliberately indifferent to Plaintiff's serious medical needs in failing to provide Plaintiff with his pre-confinement prescribed medication, failing to provide Plaintiff with treatment for his back injury and pain, and failing to order an MRI of Plaintiff's back. Plaintiff alleges that as a result, he suffered injury to his back and endured mental and physical suffering and permanent damage, for which he seeks compensatory and punitive damages. All Defendants are sued in their official and individual capacities.

Dr. Loynd argues that he is entitled to summary judgment on Count I because he was not involved in the decision to keep Plaintiff chained to the bench in August 2008, and on Count II because the record establishes that he was not deliberately indifferent to Plaintiff's serious medical needs. He further argues that Plaintiff has no cognizable injuries for which he can recover damages under § 1983 against Dr. Loynd.

4

# DISCUSSION

## Summary Judgment Standard

Federal Rule of Civil Procedure Rule 56(a) provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. *Hayek v. City of St. Paul*, 488 F.3d 1049, 1054 (8th Cir. 2007).

To be a material fact, the factual issue must potentially "'affect the outcome of the suit under the governing law.'" *Davis v. Oregon Cnty., Mo.*, 607 F.3d 543, 548 (8th Cir. 2010). "'Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, 1094 (8th Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "'Mere allegations not supported with specific facts are insufficient to establish a material issue of fact and will not withstand a summary judgment motion.'" *Id.* at 1095 n.3 (quoting *Henthorn v. Capitol Commc'n, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004)).

"It is well established that deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment." *Langford v. Norris*, 614 F.3d 445, 459 (8th Cir. 2010) (quoting *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)). The Eighth Circuit analyzes both a pretrial detainee's

5

and a convicted inmate's claims of inadequate medical care under the deliberate indifference standard. *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

"Grossly incompetent or inadequate care can [also] constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment." *Langford*, 614 F.3d at 460 (quoting *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). "For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). A "'prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation.'" *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (quoting *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992)).

Here, the Court agrees with Dr. Loynd that the record fails to establish any basis for liability on his part with regard to the claim arising out of Plaintiff being chained to the bench in August 2008. Plaintiff did not address this claim in his memorandum in

6

opposition to Dr. Lyond's motion for summary judgement. Plaintiff admits that Dr. Loynd had no involvement in the decision to segregate Plaintiff. His statement in response to Dr. Loynd's Statement of Uncontroverted Material Fact No. 36 (that Dr. Loynd had no authority to order Plaintiff's release from segregation) that "it strains reason to suggest that Defendant Loynd's medical opinions would have been ignored by other staff" (Doc. No. 75 at 7-8), amounts to speculation and does not create an issue for the factfinder with regard to Count I.

With regard to Plaintiff's claim of inadequate medical treatment in Count II, the record establishes that during each visit with Plaintiff, Dr. Loynd made a record of Plaintiff's subjective complaints, conducted a physical examination, reported the results thereof, and formulated a treatment plan. Even drawing all favorable inferences from the evidence offered by Plaintiff, his claim does not meet the "deliberate disregard" prong of the Eighth Amendment analysis. No evidence exists in the record that any of Dr. Loynd's conduct was "akin to criminal recklessness." Thus, while Plaintiff may have believed he needed to be prescribed the pain medication he had previously been prescribed, and that a new MRI was required, a difference of opinion between Plaintiff and Dr. Loynd on these matters does not give rise to a § 1983 claim. *See Meuir v. Greene Cnty. Jail Employees*, 487 F.3d 1115, 1118-19 (8th Cir. 2007) (stating that a prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of deliberate indifference to prisoner's serious medical needs under the Eighth Amendment; in the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, a prisoner cannot

7

create a question of fact by merely stating that he did not feel he received adequate treatment); *Dulany,* 132 F.3d at 1240 (same). This is especially true here in light of the expert report, deposition testimony, and affidavit of Dr. Rieger.

In sum, upon review of the record now before the Court, the Court concludes that taking the facts in the light most favorable to Plaintiff, no reasonable juror could find that Dr. Loynd was deliberately indifferent to any of Plaintiff's serious medical needs.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Robert Loynd's motion for summary judgment is **GRANTED**. (Doc. No. 69)

All claims against all parties having been resolved, a separate final Judgment shall accompany this Memorandum and Order.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of October, 2011.